UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HESHAM EL-MOSALAMY, | CASE NO. CV 98-7823 RAP (BQRx) |
| Plaintiff, | ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| v. | |
| LOMA LINDA UNIVERSITY MEDICAL CENTER, | |
| Defendant. | |

## I.

### Introduction

Plaintiff Hesham El-Mosalamy ("El-Mosalamy"), proceeding in propria persona, has brought this action against defendant Loma Linda University Medical Center ("LLUMC"), alleging discrimination under federal and related state law claims. This action arose because plaintiff El-Mosalamy was denied admission to Loma Linda University Medical Center's Graduate Medical Education (GME) residency program. Plaintiff, in his First Amended Complaint ("FAC"), asserts that he has been denied employment by defendant on the basis of his race, color,

national origin, age, and religion, in violation of federal and state law. Plaintiff seeks a judgment 1) requiring defendant to accept plaintiff for medical residency and training; 2) awarding plaintiff back pay; 3) issuing an injunction to restrain defendant from taking further discriminatory action against plaintiff; and 4) awarding attorney's fees and costs.

On December 11, 1998, the Court issued an order granting in part and denying in part defendant's motion to dismiss. In that order the Court granted defendant's motion to dismiss plaintiff's claims under the California Fair Employment and Housing Act ("FEHA") and 42 U.S.C. § 1981. However, the Court elected to treat defendant's motion to dismiss plaintiff's Title VII and Age Discrimination in Employment Act ("ADEA") claims as a motion for summary judgment. Because of the ambiguous nature of some of the documentation relied upon by defendant, the Court ordered the parties to submit supplemental papers regarding defendant's statute of limitations defense.

On March 24, 1999, the Court denied defendant's motion for summary judgement on statute of limitations grounds without prejudice. The defendant now renews its motion for summary judgement on all remaining claims. For the reasons set forth below defendant's motion is **GRANTED** in its entirety.

## II.
### Discussion

**A.  Factual Background**

Plaintiff is a graduate of Zagazig University Faculty of Medicine in Zagazig, Egypt. Plaintiff later emigrated to the United States, and eventually took the United States Medical Licensing Examination

("USMLE"), the mandatory medical licensure examination in the United States. Since plaintiff is a foreign medical school graduate, he was required to take both Step 1 and Step 2 of the USMLE. Plaintiff received scores of 75 on Step 1 and 76 on Step 2 of the examination; a score of 75 is considered passing.

Plaintiff submitted two applications to the residency programs at LLUMC: the first was an application to the Internal Medicine Residency Program, mailed to LLUMC in late August of 1996; the second was an application to the Family Medicine Residency Program, submitted in December of 1996. Plaintiff was denied admission to the Internal Medicine Program in a letter dated on September 2, 1996, and the Family Practice Residency program in a letter dated January 2, 1997. LLUMC rejected plaintiff for both of these programs on the same basis: namely, he was deemed ineligible for LLUMC's programs as a result of not fulfilling their basic educational degree requirements. Plaintiff's applications were summarily rejected, on the basis that the plaintiff did not meet the minimum eligibility criteria.[1]

LLUMC is affiliated with the Seventh Day Adventist Church. Its mission is tied to supporting the Church. (Def's Mot. at 3.)

**B.    LLUMC's Screening Criteria**

LLUMC only considers candidates for its residency program who graduated from: (1) a medical school accredited by the Liaison

---

[1] Plaintiff also argues that he was wrongfully terminated from a position he held at LLUMC in 1994. Even if he was terminated because of discriminatory animus, such an allegation is not properly before the Court.

3

Committee on Medical Education ("LCME");[2] (2) an osteopathic school accredited by the American Osteopathic Association; (3) a medical school affiliated with LLUMC; or (4) a medical school affiliated with the Seventh Day Adventist Church. (Def's Mot. at 4.) If a candidate does not fit any of the above categories, he/she can be considered for LLUMC's residency programs if they graduated from any other medical school so long as they have successfully completed one or more years of a residency program approved by the Accreditation Council for Graduate Medical Education or affiliated with LLUMC. Lastly, LLUMC will consider any candidate nominated by an entity affiliated with LLUMC. (Def's Mot. at 4.)

LLUMC has no practical way in which to determine the academic standards of schools not accredited by LCME or affiliated with the Seventh Day Adventist Church. LLUMC believes that the quality of medical education varies around the world and prefers to use the objective criteria noted above. (Def's Mot. at 5.)

## C. Applicants

There were only 47 residency positions available for the term for which plaintiff applied; 575 candidates applied for these positions. (Giang Decl. at ¶ 10.) Hence, plaintiff was one of 528 applicants rejected by LLUMC.

Fifty three percent of the admitted candidates were born in

---

[2] LCME is the accrediting body for medical schools in the U.S. and Canada. A stamp of approval from LCME is a well recognized indicator of a quality medical education. Institutions accredited by LCME must prepare a Dean's Letter for all graduates that summarizes evaluations of school officials and professors regarding the capabilities of the graduates. Graduates from non-LCME medical schools do not possess such evaluations.

4

foreign countries. In fact, LLUMC admitted an individual of Egyptian origin, Dr. Emad Faraq. Dr. Faraq was accepted, in part, because he met the program's criteria. There was an additional Egyptian applicant who met the criteria but was not admitted. (Giang Decl. at ¶ 11.)

Of the four admitted candidates who did not graduate from a qualifying school, one had completed a one year residency program and three were nominated by an LLUMC affiliate. (Supp. Giang Decl. at ¶ 3.)

Between 1993 and 1997, LLUMC admitted 118 candidates over age 40. (Giang Decl. at ¶ 13.) This translates to 9.7%. Over nine percent of the admitted individuals were over forty, even though in 1997, for example, only 3.6 of the applicants were over age 40. Id.

Finally, LLUMC argues that even if plaintiff had met the eligibility criteria, he still would have been rejected as his scores on the medical licensing exam were far below the average of the applicants admitted. (Giang Decl. at ¶ 17.)

D.  **Standard for Motion for Summary Judgment**

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). Whether a fact is material is

determined by looking to the governing substantive law; if the fact may affect the outcome, it is material. Id. at 248. If the moving party seeks summary adjudication with respect to a claim or defense upon which it bears the burden of proof at trial, its burden must be satisfied by affirmative, admissible evidence. By contrast, when the non-moving party bears the burden of proving the claim or defense, the moving party can meet its burden by pointing out the absence of evidence submitted by the non-moving party. The moving party need not disprove the other party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).

If the moving party meets its initial burden, the "adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

In assessing whether the non-moving party has raised a genuine issue, its evidence is to be believed, and all justifiable inferences are to be drawn in its favor. Anderson, 477 U.S. at 255 citing Adickes v. S. H. Kress and Company, 398 U.S. 144 (1970). Nonetheless, "the mere existence of a scintilla of evidence" is insufficient to create a genuine issue of material fact. Id. at 252. As the Supreme Court explained in Matsushita,

> [w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no "genuine issue for trial."

Matsushita, 475 U.S. at 586-87.

/ /

6

E.  **Administrative Remedies**

Plaintiff states in his first amended complaint that he is "a person of color, born in Egypt." However, plaintiff did not claim in his EEOC complaint that he had been discriminated against on the basis of his race or color. (Pedroza Decl., Exh. C.) Plaintiff only referred to his age, religion, and national origin. The notice of charge of discrimination sent by the EEOC to LLUMC similarly does not contain a charge of race discrimination. (Pedroza Decl., Exh. D.)

As a condition precedent to suing in federal court under Title VII, a plaintiff must first file a timely charge with the EEOC. 42 U.S.C. § 2000e-5(f)(1) (civil suit may be brought only after filing an EEOC charge and receiving a right to sue letter). A Title VII lawsuit filed before a claim is filed with the EEOC is barred and subject to dismissal for lack of subject matter jurisdiction. Equal Employment Opportunity Commission v. Farmers Bros. Co., 31 F.3d 891, 899 (9th Cir. 1994). The purpose of this exhaustion requirement is to provide the EEOC (or equivalent state agency) with a chance to informally resolve employment discrimination claims before resorting to litigation. Ong v. Cleland, 642 F.2d 316, 319 (9th Cir. 1981).

Generally, incidents of discrimination not included in an EEOC charge may not be considered by a court "unless the new claims are 'like or reasonably related to the allegations contained in the EEOC charge'. . . . [In making this determination] the court inquires whether the original EEOC investigation would have encompassed the additional charges." Green v. Los Angeles Cty. Superintendent, 883 F.2d 1472, 1475-76

7

(9th Cir. 1989) (applying test established in <u>Oubichon v. Northern Am. Rockwell Corp.</u>, 482 F.2d 569, 571 (9th Cir. 1973)). Where a plaintiff files a charge alleging discrimination on one ground, she generally may not then claim discrimination on another ground without amending her administrative charge. <u>Green</u>, 883 F.2d at 1476 (subsequent allegations of denial of medical leave and benefits and termination because of race and sex not reasonably related to earlier charges of sexual harassment). Plaintiff did not mention his race or color as a basis for discrimination in his EEOC charge. Therefore, plaintiff has failed to exhaust his administrative remedies with respect to these claims. These claims are not so similar to national origin, religious or age-based discrimination that the EEOC would have uncovered them in its investigation. In addition, as pointed out above, the record contains substantial inconsistencies in plaintiff's own reporting of his race and color. Accordingly, defendant's motion for summary judgment with respect to plaintiff's claims for race and color-based discrimination is **granted** for failure to exhaust administrative remedies.

### F. Burden Shifting Analysis

#### 1. Standard for Disparate Treatment Claims

For a claim of disparate treatment under Title VII, plaintiff must prove the following prima facie elements: (1) that he belongs to a protected class; (2) that he was qualified for the position; (3) that despite his qualifications he was rejected; and (4) that after his rejection the position remained

8

1  open and the employer continued to seek applications from persons
2  of complaintant's qualifications. McDonnell Douglas Corp. v.
3  Green, 411 U.S. 792, 802 (1973).

4  These standards are to be applied to race discrimination, as
5  well as claims for discrimination based upon national origin or
6  age.[3] Pejic v. Hughes Helicopters, Inc., 840 F.2d 667 (9th Cir.
7  1988). To establish a prima facie case on summary judgment, the
8  requisite degree of proof "is minimal and does not even need to
9  rise to the level of a preponderance of the evidence." Wallis v.
10 J.R. Simplot Co., 26 F.3d 885, 889 (9th Cir. 1994).

11 Once plaintiff has made out a prima facie case, the burden
12 shifts to the defendant to produce evidence of a legitimate non-
13 discriminatory reason for the adverse employment action. Godwin
14 v. Hunt Wesson, 150 F.3d 1217, 1220 (9th Cir. 1998). If the
15 defendant produces a legitimate non-discriminatory reason, the
16 presumption created by the prima facie case disappears. Wallis,
17 26 F.3d at 892. Thus, "plaintiff must then prove by a
18 preponderance of the evidence that the proffered reasons are
19 pretexts for retaliation or that a discriminatory reason more
20 likely motivated the employer's action." Tarin v. County of Los
21 Angeles, 123 F.3d 1259, 1264 (9th Cir. 1997) (quoting E.E.O.C. v.
22 Hacienda Hotel, 881 F.2d 1504, 1514 (9th Cir. 1989), abrogated on
23 other grounds, 524 U.S. 742 (1998)). Although the burden of

---

[3] Note also that because plaintiff is not arguing that defendant failed to accommodate his religion, but rather that defendant simply failed to accept him into its residency program because of his religion, the Court instead applies the prima facie case that is generally applied to actions under Title VII for disparate treatment, rather than the prima facie case for religious discrimination stemming from failure to accommodate under sections 703(a) and 701(j) of the Civil Rights Act.

9

production shifts in such cases, "the ultimate burden of persuading the trier of fact that the defendant discriminated against the plaintiff remains at all times with the plaintiff." Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981).

If the plaintiff offers direct evidence of the employer's discriminatory motive, "a triable issue as to the actual motivation of the employer is created even if the evidence is not substantial." Hunt Wesson, 150 F.3d at 1221. "Direct evidence is evidence which, if believed, proves the fact [of discriminatory animus] without inference or presumption." Id. at 1221 (quoting Davis v. Chevron, U.S.A., Inc., 14 F.3d 1082, 1085 (5th Cir. 1994)). However, if the plaintiff can only point to circumstantial evidence of a discriminatory motive, the plaintiff must provide "specific" and "substantial" evidence "in order to create a triable issue." Hunt Wesson, 150 F.3d at 1222.

2. Application

a. **Prima Facie Case**

Plaintiff has met the first requirement of the prima facie case: he has demonstrated that he is a member of a protected class; he is of Egyptian national origin, he is over age 40, and he is Muslim.

Plaintiff cannot, however, satisfy the second prong of the prima facie test. While he superficially qualifies for a residency program - he possesses a medical degree, received passing scores on both Step 1 and Step 2 of the USMLE, and submitted a completed application to defendant — he failed to

satisfy LLUMC's specific program criteria. In addition, plaintiff has failed to demonstrate that other persons with similar qualifications were accepted by defendant. In fact, plaintiff can make no such argument based on the declarations submitted by LLUMC.

Although plaintiff has asserted in his statement of genuine issues that he has better education, clinical experience, communication skills, and medical education and skills than 99% of the applicants that applied (Pl.'s Stat. Gen. Issues Facts 1-5), he has not provided any evidence to support these assertions. At the summary judgment stage, it is not sufficient for plaintiff to rely upon mere allegations. He must set forth, through affidavits or other evidence, specific facts showing the existence of a genuine issue for trial. Fed. R. Civ. P. 56(e). Plaintiff has failed to provide the Court with any such evidence here. In fact, the evidence submitted by both plaintiff and defendant indicates that the LLUMC accepted a candidate of Egyptian origin at the same time it rejected plaintiff, does not admit applicants who are not from a qualifying school unless they have completed a one year residency or were nominated by an LLUMC affiliate, or who have USMLE test scores as low as plaintiff. (Giang Decl. ¶¶ 4-13, 17.) Plaintiff has not provided one example of a candidate with equivalent scores and qualifications who was treated more favorably.

In light of the absence of evidence indicating that LLUMC acted on any criteria other than its own eligibility criteria, the Court finds that plaintiff has failed to establish a prima facie case. No reasonable jury could conclude otherwise.

### b. Legitimate Reasons

Even if plaintiff had met the minimal burden of demonstrating that he was rejected by LLUMC and others with equal qualifications were not, defendant has stated a legitimate reason for rejecting plaintiff. Defendant maintains minimum eligibility criteria for two reasons. First, to ensure that all candidates admitted to its residency program have had adequate medical training. Second, to fulfil its religious mission. In addition, as discussed above, plaintiff's USMLE scores placed him well below the average admitted applicant.

It is appropriate in the context of programs requiring advanced degrees to reject an application on the basis that his educational background is insufficient. <u>Merwine v. Board of Trustees of State Institutions</u>, 754 F.2d 631 (5th Cir. 1985)(upholding a university's requirement of a master's degree in library science from an accredited school for a particular position). Thus, LLUMC has offered legitimate non-discriminatory reasons for rejecting plaintiff.

### c. Pretext

Since LLUMC has provided legitimate reasons for denying admission to plaintiff, the burden shifts to plaintiff to provide evidence that these reasons are pretextual. <u>St. Mary's Honor Center v. Hicks</u>, 509 U.S. 502, 515-516 (1993). Plaintiff has provided no such evidence.[4] At the summary judgment stage, it is

---

[4] In fact, the record is fraught with factual contradictions to plaintiff's claims of discriminatory treatment. For example, although plaintiff asserts repeatedly that defendant systematically discriminated

no longer sufficient for plaintiff simply to claim that he was discriminated against upon certain enumerated grounds. Defendant has put forth valid reasons for selecting candidates other than plaintiff. Plaintiff has failed to rebut these explanations. Accordingly, defendant's motion for summary judgment on plaintiff's claims of national origin, religion and age-based discrimination is **granted.**

### III.

### Conclusion

Accordingly, for the reasons given above, defendant's motion for summary judgment is **granted in its entirety.** Judgment shall be entered forthwith. Defendant shall recover its costs of suit.

**IT IS SO ORDERED.**

DATED: February 9, 2000

**RICHARD A. PAEZ**
───────────────────
Richard A. Paez
United States District Judge

---

against non-white candidates (Pl.'s FAC at 3), the facts here contradict this claim; of the candidates ultimately chosen to fill the residency positions in 1997-98, one was Egyptian, several were over forty, and four were from foreign medical schools.

13